UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHAN COCHRANE,

       Petitioner,

                            Case No. 2:08-cv-10319

v.

                            HONORABLE STEPHEN J. MURPHY, III

JEFF WOODS,

       Respondent.

_____/

**OPINION AND ORDER DENYING THE
PETITION FOR A WRIT OF HABEAS CORPUS**

*Pro se* petitioner Stephan Cochrane, currently confined at the Cotton Correctional

Facility in Jackson, Michigan, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Cochrane challenges his convictions of first-degree felony murder, in violation of Mich.

Comp. L. § 750.316, carrying a dangerous weapon with unlawful intent, in violation of Mich.

Comp. L. § 750.226, and of being a second felony habitual offender, in violation of Mich.

Comp. L. § 769.10.  For the reasons stated below, the application for writ of habeas corpus

is will be denied.

**BACKGROUND**

Cochrane was convicted of the above offenses following a jury trial in the Saginaw

County Circuit Court.  He was also convicted of armed robbery, but this conviction was later

vacated on double-jeopardy grounds.  The witnesses and testimony at his trial were as

follows.

I.      Testimony Against Cochrane

1

Sandra L. Smith was the aunt of the victim, Glen Simon.  Smith testified that on the date of the murder, Simon was in her room using the telephone in an attempt to determine the value of a Bridge Card, a card issued by the Family Independence Agency in lieu of food stamps.  A Bridge Card can only be used to purchase food and has no cash value. When Smith showed Simon how to do this, she noticed that Cochrane's name was on the Bridge Card.

Kenya Triplet was Simon's cousin.  Simon asked her to take him to a store to use the Bridge Card.  From there he asked Triplet to drive him to the Bancroft residential building because he wanted to talk to the card's owner.

Edward A. Thompson lived on the sixth floor of the Bancroft.  While he was watching television, Thompson heard "a blood curdling scream" coming from in front of his door. When Thompson looked into the hall he did not see anyone but observed a spatter of blood on the opposite wall.  Thompson went into his apartment and called 911.  Thompson then proceeded downstairs to inform the security office.  Thompson also noticed a bloody hand print on the wall near his door.  Thompson let the emergency personnel and the police in the front door.

Monica Roach was also a cousin of the victim.  Roach went with Simon to the fourth floor of the Bancroft apartment building to use Gloria Couch's telephone.  On the way to her apartment, Roach heard a commotion, a loud bang, and some shouting.  When Roach called out, she heard Simon calling her by name.  When Roach arrived on the sixth floor, she observed Simon standing in a corner, with Cochrane standing in front of him, while holding "a long butcher knife."  Roach heard Cochrane asking Simon where his gun was. Simon informed Cochrane that he did not have a gun.  As they were going down the steps,

2

Simon asked Roach to tell Cochrane to stop stabbing him.  Roach began screaming and informed her cousin that she was going to get help.  With the two men right behind her, Roach heard Simon ask Cochrane again "man, why you still hurting me."  Roach subsequently returned to the fourth floor and found Simon lying on the floor, with a large amount of blood around him.  Cochrane told Roach and a man identified only as "Snake" that if Simon didn't give him his money, he was going to count to three and was going to stab him again. There was a lot of blood on the floor, and Roach observed Cochrane searching Simon's pants pocket "over and over and over again."  Roach testified that Cochrane found Simon's wallet, which he threw back after looking through it.  When Cochrane finished searching Simon, he ran down the stairs past her, still holding the knife.

James Johnson was a security officer at Bancroft building.  Johnson was informed about the stabbing by Ed Thompson.  When Johnson arrived on the sixth floor, he saw blood on the walls and on the stairs.  He followed this trail to the stairwell where it ended.  Johnson found the victim's body, as well as blood smeared on the wall, which made it look as though the victim had tried to run away.  Johnson noticed that the victim's pants had been pulled down.

Glory Couch was a resident of the Bancroft.  Couch testified that Simon had come to her apartment with his cousin Monica Roach to use the telephone.  Simon then left her apartment, followed by the two women.  When they got to the landing on the fourth floor, the women heard Simon calling Roach for help, and begging her "don't let him stab me."  Roach responded that would get help.  Couch then watched Cochrane and the victim coming down the stairs.  Cochrane was in possession of a big butcher knife and was holding his jacket, while Simon was begging him not to stab him, stating "you're hurting me

3

over my own money." Couch began screaming to Cochrane for him to stop and started praying. Cochrane released the victim, who fell down flat on the concrete. Cochrane bent down over the victim and demanded his Bridge Card. Simon replied that he didn't have the Bridge Card. Couch testified that Cochrane began going through Simon's pocket and his billfold.

Bobbie Avery and Eddie Cox, both residents of Bancroft, confirmed much of this testimony. Cox, who apparently was the man known as "Snake," added that Simon had told him that Cochrane owed him something and gave him the Bridge Card to pay for it.

Officer Timothy Llewellyn responded to the Bancroft building. A woman pointed down the hall at Cochrane, who had blood stains on his tennis shoes. The woman informed the police that this was the man whom she had seen standing over victim's body. Cochrane was then arrested. Cochrane informed the police that four men came to his apartment armed with knife and had robbed him, taking his TV, VCR, and other items. Cochrane informed the police that he took the knife away from them and was sure he cut two of the men before they retrieved the knife.

Officer Matthew Ward noticed a small cut of some type on Cochrane's shoulder with just a little bit of blood. Officer Derek Peters went to Cochrane's apartment, but observed no sign of blood in the apartment, nor did he see evidence of knife wounds on Cochrane's hand or back.

The autopsy revealed that the victim suffered twenty four stab wounds. One of the wounds through the lung and heart was fatal.

II.   Cochrane's Testimony

4

Cochrane testified that he was living with his father and on the morning in question he obtained cocaine from Simon, for which he traded his Bridge Card. According to Cochrane, Simon became angry when he was unable to obtain money with the card. Cochrane was at his own apartment getting high on cocaine when Simon appeared at the door with another person and demanded his money. Cochrane offered Simon his father's house key as an alternative collateral for the cocaine. Simon then pulled out a knife and repeated his demanded. Cochrane ran down the hall and felt a cut on his back. Cochrane turned and grabbed Simon's hand, suffering a small cut on his own hand, but eventually managed to wrestle the knife from Simon, and to stab Simon with it. Cochrane then went through Simon's trousers looking for his father's key and his Bridge Card, ultimately finding the key but not the card. Cochrane then dropped the knife and left. He acknowledged that he told the police at the time of his arrest that four men tried to rob him. Cochrane further admitted that he continually stabbed Simon while he was trying to get away from him.

III.   Rebuttal Testimony

The prosecutor called a nurse from the county jail, Amy Valerio, in rebuttal, who drew blood from  Cochrane when he was logged in at the jail. Valerio testified that Cochrane did not complain of a cut to the forefinger or to his back, nor did she observe any signs of such injuries.

IV.   Conviction and Appeal

The jury convicted Cochrane, and its verdict was affirmed on appeal. *People v. Cochrane,* No. 251043 (Mich.Ct.App. July 12, 2005); *lv. den.* 474 Mich. 957 (2005). Cochrane then filed a post-conviction motion for relief from judgment, which was denied. *People v. Cochrane,* No. 02-021253-FC (Saginaw County Cir. Ct., Jan. 12, 2007). The

5

Michigan appellate courts denied Cochrane's post-conviction appeal. *People v. Cochrane*,

No. 277008 (Mich.Ct.App. July 10, 2007); *leave to appeal denied,* 480 Mich. 1005 (2007).

In the instant petition, Cochrane seeks a writ of habeas corpus on the following

grounds:

I. Defendant was deprived of his Ams V and XIV rights of due process and his Am VI right of effective assistance of counsel because defense counsel was constitutionally ineffective by deviating from the Rule respecting jury selection which did not comply with MCR 2.511(F), and where counsel indicated satisfaction with the jury selected.  He was also ineffective with respect to the various issues described in Defendant's brief.

II. Defendant's Am V right to be free from double jeopardy was violated when the trial court sentenced defendant for first-degree felony murder and the underlying felonies of armed robbery and armed with a dangerous weapon with unlawful intent.

III. Defendant is entitled to reversal of the first-degree murder convictions due to insufficient evidence where the evidence was insufficient to sustain the underlying charge/element of armed robbery since the prosecutor:
   (1) Never established that property belonging to the victim was stolen or even taken by the defendant;
   (2) Never proved a felonious intent to permanently deprive the victim of any property; and
   (3) Where the evidence showed that the items which defendant searched for in the victim's pockets belonged to the defendant and not the victim.

IV. Exclusion of the transcripts from the competency hearing held in this case on 1/23/03 is an interference with defendant's right to the effective assistance of appellate counsel where the defendant, who never waived the right to participate in critical stages of the proceedings, was not present at the hearing and appellate counsel is unable to present the issue of defendant's right to be present being denied, without access to the transcript.

V. Defendant's convictions must be reversed because there is insufficient evidence to support a charge of first-degree premeditated murder, felony murder, armed robbery, and armed with a dangerous weapon with unlawful intent.

VI. Defendant was denied the right to due process where he raised the possibility that he was incompetent to stand trial yet the trial court allowed the

6

trial to proceed and failed to make a judicial finding or hold a hearing on the matter of competency.

VII. Defendant suffered a complete denial of counsel at a critical stage of the proceedings where Attorney Brady Denton failed to consult with Defendant Cochrane through the entire pretrial period and did not meet with Defendant until the first day of trial.

VIII. Defendant's trial counsel provided ineffective assistance of counsel where [he] performed deficiently and failed to take many obvious acts in defense of defendant's right to a fair trial.

IX. The trial court committed reversible error when it failed to respond to the jury request for crime scene photos, effectively foreclosing the possibility of jury review of relevant evidence; alternatively, if the court did respond to the request, the court erred in failing to make a record of its response to a jury request for photos of the crime scene, and any other photos that they did not see during trial and where the communication took place outside of the presence of Defendant Cochrane and his trial counsel.

X. Defendant is allowed to present claims II, III(a), and III(b) without a showing of cause and prejudice, and without showing a retroactive change in the law where these issues were, in fact, presented in a prior appeal and they were never decided against defendant since the Court of Appeals declined to review the claims; alternatively, if this court finds that claims II, III(a), and III(b) have been defaulted, such default is excusable where failure to properly present the claims was the result of ineffective assistance of appellate counsel.

XI. Cause for failure to present the issues III(c), (d), (e), and Issue IV, is established by the ineffectiveness of defendant's appellate counsel.

## LEGAL STANDARD

28 U.S.C. § 2254(d) imposes the following standard governing habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

7

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" of federal law occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

## DISCUSSION

I.     Jury Selection Claims

Cochrane first contends that the jury selection process in his case violated M.C.R. 2.511(F), because certain peremptory challenges were exercised in groups, rather than done individually.  Petitioner further claims that his trial counsel was ineffective for failing to object to this violation.

The Michigan Court of Appeals rejected Cochrane's challenge to the jury selection process, on the ground that appellate consideration of the issue had been waived because defense counsel exercised only nine of his twelve peremptory challenges and stated his satisfaction with the jury.  *People v. Cochrane,* No. 251043 at *1 (Mich.Ct.App. July 12, 2005); *leave to appeal denied*, 474 Mich. 957 (2005) (internal citations omitted). Moreover, although the Michigan Court of Appeals acknowledged that "the jury selection

8

process was flawed to an extent because of the existence of some predictability and a lack of randomness," the court could not conclude that the process was unfair or that Cochrane had been deprived of having an impartial jury hear his case. *Id.*

Where a defendant's attorney expresses satisfaction with the trial court's handling of a matter, as was the case here, the claim of error regarding the issue is waived for appellate review. *See People v. Carter,* 462 Mich. 206, 219 (2000). Because the Michigan Court of Appeals relied on counsel's expression of approval of the jury selection process to reject Cochrane's claim, the issue is procedurally defaulted. *See McKissic v. Birkett,* 200 Fed. Appx. 463, 471 (6th Cir. 2006).

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). As part of his first claim, Cochrane alleges that counsel was ineffective for failing to object to the jury selection process. Ineffective assistance of counsel may be cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Not just any deficiency in counsel's performance will excuse a procedural default, however; the assistance must have been so ineffective as to violate the Federal Constitution. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

The United States Supreme Court precedent most applicable to constitutional assistance-of-counsel claims is *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient

9

performance prejudiced the defense. *Strickland,* 466 U.S. at 687. To prevail on his ineffective assistance of counsel claims, therefore, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, this precedent.

In rejecting Cochrane's underlying ineffective assistance of counsel claim, the Michigan Court of Appeals concluded that  Cochrane failed to overcome the strong presumption that counsel's decision not to challenge the selection process was sound trial strategy.  *People v. Cochrane,* No. 251043 at *2 (Mich.Ct.App. July 12, 2005); *leave to appeal denied*, 474 Mich. 957 (2005) ("[U]nderstandably and reasonably, defense counsel may have preferred the predictability of the method used.  Indeed, his support of the method was demonstrated by the fact that he chose not to exercise three of his peremptory challenges.") *Id.*

This Court agrees that Cochrane's ineffective assistance of counsel claim must fail, because he has failed to show that the trial court's jury selection process of exercising peremptory challenges lead to the seating of any juror with an actual bias towards him. Thus, there is no indication that choosing different jurors would have produced a different result in this case, and Cochrane has therefore failed to show that he was prejudiced by counsel's decisions regarding the exercise of peremptory challenges or his failure to object to the jury selection process.  *See, e.g., Tinsley v. Million,* 399 F. 3d 796, 805-06 (6ᵗʰ Cir. 2005); *Jackson v. U.S.*, 248 F. Supp.2d 652, 659 (E.D. Mich. 2003).

Without a showing that his trial counsel was ineffective in this regard, Cochrane is unable to establish cause to excuse the procedural default of the underlying jury selection claim.

The Court additionally notes that Cochrane has not established that any fundamental miscarriage of justice has occurred.  The miscarriage- of-justice excuse for procedural default requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).   Cochrane does attack the sufficiency of the evidence claims on which his convictions were based.  But, as will be explained below, the Court regards this argument as insufficient to invoke the actual innocence doctrine to the procedural default rule. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).   Cochrane therefore is not entitled to habeas relief on his first claim.

II.   Double Jeopardy Claim

 Cochrane next contends that his right to be free from double jeopardy was violated when the trial court sentenced him for the crimes of first-degree murder, armed robbery, and carrying a weapon with unlawful intent.  As an initial matter, this Court notes that the trial court vacated Cochrane's armed robbery conviction subsequent to his conviction, thereby correcting any constitutional infirmity and mooting the double jeopardy claim with respect to that conviction.

The Michigan Court of Appeals rejected Cochrane's other double jeopardy challenge, concluding that:

> [T]he Legislature did not intend to preclude punishment for both the offense of carrying a dangerous weapon with unlawful intent and felony murder. Carrying a dangerous weapon with unlawful intent, MCL 750.226, is not an enumerated underlying felony for purposes of felony murder, and thus MCL 750.226 is not a base statute incorporated by MCL 750.316 in order to

increase penalties.  Additionally, the offenses do not serve to protect against violations of the same social norm.  Defendant claims that they both serve to protect against unlawful use of a weapon. However, the purpose of the felony-murder statute is to punish persons who commit murder during the commission of a felony, regardless of whether they used a weapon to commit the killing. The focus of MCL 750.226 is on weaponry. There is no double jeopardy violation.

*People v. Cochrane,* No. 251043 at *2-3 (Mich. Ct. App. July 12, 2005); *lv. den.* 474 Mich. 957 (2005).

The Double Jeopardy Clause provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  The Clause serves the function of preventing both successive punishments and successive prosecutions.  *United States v. Ursery*, 518 U.S. 267, 273 (1996).  The protection against multiple punishments prohibits the government from "punishing twice or attempting a second time to punish criminally for the same offense." *Witte v. United States*, 515 U.S. 389, 396 (1995) (emphasis omitted) (quoting *Helvering v. Mitchell*, 303 U.S. 391, 399 (1938)).  The Clause does not, however, prohibit the state from prosecuting a defendant for multiple offenses in a single prosecution.  *See Ohio v. Johnson,* 467 U.S. 493, 500 (1984).  Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, whether the punishments that result from prosecution for multiple offense are duplicative, in violation of the Double Jeopardy Clause, is essentially a question of legislative intent. *Id.* at 499.

When multiple convictions are secured at a single trial, the test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment is that set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *Brown v. Ohio*, 432 U.S. 161, 166 (1977).  As the Supreme Court explained that test in

12

*Brown*:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not....

> This test emphasizes the elements of the two crimes. "If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes..."

*Id.* at 166 (quoting *Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975)).

The analysis required by *Blockburger* requires the Court to determine "whether [the legislature] intended to punish each statutory violation separately." *Pandelli v. United States*, 635 F. 2d 533, 536 (6th Cir. 1980) (quoting *Jeffers v. United States*, 432 U.S. 137, 155 (1977)). "To determine the [legislative] intent it is necessary to examine the statutory language and the legislative history, as well as to utilize other techniques of statutory construction." *Pandelli,* 635 F.2d at 536. Only if the legislative intent is not clearly expressed or cannot be discerned by accepted techniques of statutory construction, must the Court then analyze the two crimes to determine if the elements completely overlap according to the *Blockburger* test. *Id.* The *Blockburger* test focuses on "the statutory elements of the two crimes with which a defendant has been charged, not on the proof that is offered or relied upon to secure a conviction." *United States v. Barrett*, 933 F.2d 355, 360-61 (6th Cir. 1991) (internal citations and quotes omitted). Thus, the Double Jeopardy Clause is not violated merely because the same evidence is used to establish more than one statutory violation. *See United States v. Dixon*, 509 U.S. 688, 696 (1993).

In deciding a petitioner's Double Jeopardy claim on habeas review, a federal court is bound by a state appellate court's determination that the legislature intended cumulative

punishments for multiple convictions arising out of the same criminal incident. *See Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989). Once a state court has determined that the state legislature intended cumulative punishments for separate offenses, a federal habeas court must defer to that determination. *Id.*

Here, as quoted above, the Michigan Court of Appeals clearly determined that the Michigan Legislature did indeed intend cumulative punishments for the offenses of first-degree felony murder and carrying a dangerous weapon with unlawful intent. The Court is bound by that determination on habeas review. *Id.* Because this determination is binding and conclusive in federal habeas corpus proceedings, Cochrane's double jeopardy claim habeas claim fails.

III.   Sufficiency of the Evidence Claims

In his third and fifth claims, Cochrane challenges the sufficiency of the evidence to convict him in this case. The relevant inquiry for a court analyzing in a sufficiency-of-the-evidence claim on habeas review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In other words, "[u]nder *Jackson*, habeas corpus relief is appropriate based on insufficient evidence only where the court finds, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (citing *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007)). In making such an inquiry, the habeas court may not substitute its own judgment for that of the finder of fact, *Alder v. Burt,* 240 F. Supp. 2d 651, 661 (E.D. Mich. 2003), but instead "must

14

presume that the trier of fact resolved all conflicting inferences in the record in favor of the state and defer to that resolution," *Terry v. Bock,* 208 F. Supp. 2d 780, 794 (E.D. Mich. 2002).  Circumstantial evidence and reasonable inferences arising from the evidence may be sufficient proof of the elements of an offense. *See Kelley v. Jackson,* 353 F. Supp. 2d 887, 891 (E.D. Mich. 2005).  The Court will not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the finder of fact. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F. 3d 594, 618 (6th Cir. 2002).

> A.   Felony Murder

Cochrane's third claim is that there was insufficient evidence of the underlying predicate felony of armed robbery to convict him of first-degree felony murder. Specifically, Cochrane argues that the prosecutor failed to prove that Cochrane intended to permanently deprive the victim of his property.  Instead, says Cochrane, the evidence was that he merely attempted to take back the Bridge Card that he had given him as payment for drugs.

Under Michigan law, the elements of first-degree felony murder are:

(1) the killing of a human being;
(2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (i.e., malice);
(3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute.

*Matthews v. Abramajtys,* 319 F. 3d 780, 789 (6th Cir. 2003) (citing *People v. Carines*, 460 Mich. 750, 754 (1999)).

The elements of armed robbery under Michigan law are: (1) an assault, and (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute. Mich. Comp. L. sec. 750.529; *People v. Allen*, 201 Mich. App. 98, 100 (1993)).  Armed robbery is a specific intent crime for which the prosecutor must offer proof that the defendant intended to permanently deprive the owner of his or her property. *People v. King*, 210 Mich.App. 425, 428, (1995).

In the present case, there was sufficient evidence for a rational trier of fact to conclude that  Cochrane had taken property or money from the victim at the time of the killing and had intended to permanently deprive him of these items, so as to sustain a conviction of first-degree felony murder based on the underlying felony of armed robbery. As the Michigan Court of Appeals noted in its opinion, several witnesses testified that they heard  Cochrane demand money from the victim. *See People v. Cochrane,* No. 251043 at *3-4 (Mich.Ct.App. July 12, 2005); *lv. den.* 474 Mich. 957 (2005).  Although  Cochrane claimed that he went into the victim's wallet to retrieve his Bridge Card, the evidence showed that the Bridge Card was still in the victim's wallet when it was recovered by the police.  No money, however, was found in the victim's wallet.  It could therefore be inferred that  Cochrane ignored the Bridge Card and was looking to remove something else from the victim's wallet, like money.  Glory Couch testified that the the victim stated, "See, you killed me over my own money[,]" or words to that effect.  Under the circumstances, a rational trier of fact could conclude that Cochrane had intended to take the victim's money from his wallet during the stabbing, so as to support a conviction for first-degree felony murder based upon the underlying felony of armed robbery.

B.    Self-Defense

16

In his fifth claim for relief, Cochrane contends that the prosecution failed to prove beyond a reasonable doubt that he was not acting in self-defense.  Under Michigan law, one acts lawfully in self-defense if he honestly and reasonably believes that he is in danger of serious bodily harm or death, as judged by the circumstances as they appeared to the defendant at the time of the act.  *People v. Heflin*, 434 Mich. 482 (1990)).  But a defendant is not entitled under Michigan law to use any more force than is necessary to defend himself. *See People v. Kemp,* 202 Mich. App. 318, 322 (1993).  In addition, under Michigan law, before using deadly force in self-defense, a person has a duty to retreat if it is safely possible to do so. *See People v. Mroue*, 111 Mich. App. 759, 765 (1981)).

In the present case, the prosecution presented sufficient evidence for a rational trier of fact to conclude that Cochrane did not act in self-defense.  A number of witnesses testified that Cochrane was the aggressor in this case, having pulled a knife on the victim.  Although Cochrane informed the police that he took the knife away from them and was sure he cut two of the men before they retrieved the knife, Officer Peters observed neither blood in Cochrane's apartment nor any evidence of knife wounds on Cochrane's hand or back.  Despite the fact that the victim was unarmed when Cochrane stabbed him, Cochrane took no steps to retreat or otherwise avoid the victim.  Finally, Cochrane stabbed the victim twenty four times, thus using much more force than would have been necessary to defend himself.  On this evidence, a reasonable trier of fact could have concluded beyond a reasonable doubt that Cochrane was the aggressor, that he lacked any reasonable belief that he was in serious danger, and that he stabbed the victim twenty-four times intending to inflict death or great bodily harm.

For all these reasons, Cochrane is not entitled to habeas relief on his third and fifth

17

claims.

IV.    Competency Hearing Claim

Cochrane next claims that he was denied the effective assistance of appellate counsel, because his counsel failed to procure a transcript of a competency hearing in which petitioner claims he did not appear.

In rejecting this claim, the Michigan Court of Appeals noted:

> The lower court docketing statement indicates that a competency hearing was held on January 23, 2003.   While the docketing statement also indicates that defendant himself was present at the competency hearing along with the presence of counsel, defendant argues that he was not present.   Defendant fails to submit an affidavit to that effect, and the parties stipulated to the introduction of a forensic psychiatric report to allow the trial court to determine whether defendant was competent to stand trial. Defendant's argument is speculative and not worthy of reversal or remand."

*People v. Cochrane,* No. 251043 at *4 (Mich. Ct. App. July 12, 2005); *leave to appeal denied*, 474 Mich. 957 (2005).

A federal court must apply the presumption of correctness to state court findings of fact for habeas corpus purposes unless clear and convincing evidence is offered to rebut this presumption. *Bailey v. Mitchell*, 271 F. 3d 652, 656 (6th Cir. 2001).  A state appellate court's findings of fact are also entitled to the presumption of correctness.  *Martin v. Rose*, 744 F. 2d 1245, 1252 (6th Cir. 1984).  Additionally, a habeas court is permitted to take judicial notice of the records in the case which resulted in the petitioner's underlying conviction. *See Taylor v. United States*, 161 F. App'x 483, 485-86 (6th Cir. 2005).  In the absence of reliable evidence to the contrary, this Court should and will presume the accuracy of a court clerk's docket entries.  *Arnold v. Wood,* 238 F. 3d 992, 995 (8th Cir. 2001).

18

In this case, the Court of Appeals's rejection of Cochrane's fourth claim was supported by the record. The trial court docket sheet indicates that Cochrane was present at his competency hearing along with his attorney. *See* trial court docket sheet, p 4, this Court's docket entry 8-1. Additionally, the trial court judge's finding and order on competency states, in part, that "[b]ased upon a competency hearing with the defendant and defendant's counsel present". See Finding and Order on Competency, January 24, 2003, this Court's docket entry 8-17.

Since Cochrane has thus failed to offer clear and convincing evidence to rebut the correctness of this factual determination, he also has failed to show that counsel was ineffective for failing to raise this claim on appeal, and therefore is not entitled to habeas relief on his fourth claim.

V.    Constructive Denial of Counsel

In his seventh claim, Cochrane contend that he suffered the complete denial of counsel because his counsel failed to consult with him through the entire pre-trial period. Although respondent contends that this claim is procedurally defaulted because Cochrane did not raise the claim until post-conviction review, it appears that Cochrane's appellate counsel did raise this claim of ineffective assistance of counsel on direct appeal, albeit in a conclusory fashion. Thus, this claim is not procedurally defaulted.

Even so, this claim must fail for lack of evidentiary support. The disbursement voucher that was submitted by counsel to the Saginaw County Circuit Court indicates that counsel met with Cochrane at the county jail for an hour and a half on April 17, 2003, which was prior to Cochrane's trial date. The disbursement sheet also shows that there was a hearing was held on April 22, 2003, where counsel and Cochrane presumably

19

talked. In contradiction of this evidence, Cochrane offers only his own bald assertions. Such conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief.  *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998).

In any event, defense counsel's alleged failure to visit or discuss a case with a defendant prior to trial, or to completely review the evidence with the defendant, does not render his assistance ineffective unless it also prejudiced the outcome of the trial.  *See Bowling v. Parker,* 344 F. 3d 487, 506 (6th Cir. 2003) Here, in light of the overwhelming evidence presented against him at trial, Cochrane has failed to offer any arguments or otherwise show how additional consultation with his counsel could have altered the outcome of the trial.   His assistance-of-counsel claim must fail for this reason as well.[1]

VII.    Other Claims

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. at 750.  Here, respondent contends that Cochrane's remaining claims are procedurally defaulted under M.C.R. 6.508(D)(3).[2]  Similarly to *Coleman*, this rule provides that, if a motion for relief from

_____

[1] Although it is not dispositive of this claim, the Court notes that the lawyer who defended Cochrane at trial was his fifth court-appointed attorney.  Cochrane does not allege that his first four attorneys failed to visit or consult with him in this matter.

[2] Respondent also argues that  Cochrane's tenth and eleventh claims are procedurally defaulted.  This is not quite correct, however, since these "claims" are not really independent claims at all, but instead grounds asserted by Cochrane to excuse the procedural default of some of his other claims.  As such, they cannot be and are not

20

judgment alleges grounds for relief which could have been but were not raised on direct appeal, the court may not grant relief unless the defendant shows (a) good cause for his failure to raise such grounds previously, and (b) actual prejudice resulting from the irregularities that he complains of.

The record indicates that Cochrane indeed raised his remaining claims for the first time with the state courts on post-conviction review.[3]   The trial court judge denied Cochrane's claims, noting that this was the "<u>fourth</u> post-trial judicial review that Defendant has requested." *People v. Cochrane,* No. 02-21253-FC, at *1.  Both the Michigan Court of Appeals and the Michigan Supreme Court also denied Cochrane's post-conviction appeals, invoking M.C.R. 6.508(D).  As a result, his claims are procedurally defaulted, *see Simpson v. Jones*, 238 F. 3d 399, 407 (6th Cir. 2000), and in order to assert them here Cochrane must first show good cause plus actual prejudice.

Cochrane first takes issue with the "cause and prejudice" requirement of 6.508(D) with respect to his sixth claim, the one pertaining to his competency hearing.  Cochrane notes, correctly, that Rule 6.508(D)(3)'s requirements do not apply to a defendant's assertion that the court that convicted him lacked jurisdiction to do so.   *People v.*

_____

defaulted.

[3] Cochrane's eighth claim alleges various allegations of ineffective assistance of trial counsel.  Although  Cochrane's appellate counsel did raise several ineffective assistance of counsel claims on petitioner's direct appeal, none of these were based on the same grounds as his eighth claim here.  Cochrane apparently agrees, since his claim that his appellate counsel was ineffective is predicated on counsel's failing to assert this exact claim. As a result, Cochrane's eighth claim in this petition was not fairly presented to the state courts as part of the direct appeal process. *See Caver v. Straub,* 349 F. 3d 340, 346-47 (6th Cir. 2003) (citing *Pillette v. Foltz,* 824 F. 2d 494, 497 (6th Cir. 1987)).

2:08-cv-10319-SJM-RSW   Doc # 10   Filed 10/27/09   Pg 22 of 25   Pg ID 1012

*Carpentier,* 446 Mich. 19, 27 (1994). He then argues that his mental-competency claim is this type of jurisdictional attack. This Court, however, does not hear habeas petitions in order to interpret the laws of Michigan. Even if it did, Cochrane's contention is simply incorrect. In *People v. McSwain*, 259 Mich.App. 654; 676 N.W. 2d 236 (2003), the Michigan Court of Appeals held that a criminal defendant was precluded from obtaining a new trial based on her alleged mental incompetency to stand trial, when she was unable to show cause and prejudice, as required by 6.508(D)(3), for failing to raise a claim involving her mental competency to stand trial in an earlier proceeding. *Id.* at 685-95. Accordingly, the Michigan appellate courts properly refused to consider Cochrane's mental-competency argument in post-conviction proceedings, based on Cochrane's failure to show cause and prejudice for his failure to raise the issue on direct appeal.

Cochrane further alleges that appellate counsel's ineffectiveness in failing to raise petitioner's sixth, eighth, and ninth claims in his appeal of right constitutes adequate cause to excuse his procedural default. This claim also must fail. It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 754 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 753 (citations

22

2:08-cv-10319-SJM-RSW   Doc # 10   Filed 10/27/09   Pg 23 of 25   Pg ID 1013

omitted).  As a result, strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir. 2002) (internal quotations omitted).

That was not the case here.  Appellate counsel filed a twenty-two page brief which raised two claims on direct appeal, and Cochrane raised three additional claims in a supplemental Rule 11 brief, most likely composed with the assistance of appellate counsel.  Cochrane has not shown that appellate counsel's strategy in presenting these claims and not raising others was so deficient or unreasonable as to excuse the default of the omitted claims.  *See McMeans v. Brigano,* 228 F. 3d 674, 682-83 (6th Cir. 2000); *Meade,* 265 F. Supp. 2d at 872.  Furthermore, the Court again notes that no fundamental miscarriage of justice is evident here.  *See Schlup,* 513 U.S. at 326-27.

Additionally, even if Cochrane *had* established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief.  The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F. 3d 883, 891 (6th Cir. 2007).  For the reasons stated by the respondent in their answer to the petition, Cochrane has failed to show that his remaining claims have any merit. Cochrane's claims are thus barred by procedural default and do not warrant relief.

Of course, Cochrane could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first

opportunity that he had to raise this claim. *See Hicks v. Straub*, 377 F. 3d 538, 558, n.17 (6th Cir. 2004).  But the Court has already concluded that Cochrane has failed to show that appellate counsel was deficient in failing to raise petitioner's sixth, eighth, and ninth claims on appeal.  Moreover, Cochrane is unable to show that he was prejudiced by appellate counsel's failure to raise these claims, in light of the fact that these same claims were presented to the Michigan trial and appellate courts on petitioner's post-conviction motion for relief from judgment and rejected by them. *See Hollin v. Sowders*, 710 F.2d 264, 265-67 (6th Cir. 1983).

VII.   Certificate of Appealability

Pursuant to 28 U.S.C. § 2253, before a petitioner may appeal a decision of this Court, the Court must determine if petitioner is entitled to a Certificate of Appealability ("COA"). *See also* Fed. R. App. P. 22(b).  The Court must either issue a certificate of appealability indicating which issues satisfy the required showing, or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b).  A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is satisfied when a petitioner demonstrates "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)).  In making this determination, a habeas court should "limit its examination to a threshold inquiry into the underlying merit of his claims." *Id.* at 323.

After conducting the required inquiry, and for the reasons stated in the opinion

24

above, the Court finds that Cochrane has not made a substantial showing of the denial of a constitutional right with respect to any of the claims presented, and should not receive any encouragement to proceed further. *Slack*, 529 U.S. at 484.  Because the Court can discern no good faith basis for an appeal, *see Miller-El*, 537 U.S. at 338, any appeal would be frivolous.  The Court will therefore deny a certificate of appealability. *See Long v. Stovall,* 450 F. Supp. 2d 746, 755 (E.D. Mich. 2006).  The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous.

### ORDER

**WHEREFORE,** it is hereby **ORDERED** that the petition for a writ of habeas corpus is **DENIED**, and **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that a Certificate of Appealability is **DENIED**, and that petitioner will be denied leave to appeal *in forma pauperis.*


**SO ORDERED.**


                    s/Stephen J. Murphy, III
                    STEPHEN J. MURPHY, III
                    United States District Judge

Dated:  October 27, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 27, 2009, by electronic and/or ordinary mail.

                    s/Alissa Greer
                    Case Manager